CITY SAVINGS BANK OF BRIDGEPORT *v.*
ANDREAS DESSOFF ET AL.
(2346)

DUPONT, C.P.J., HULL and SPALLONE, Js.

Argued February 6—decision released April 30, 1985

*Richard G. Kent,* with whom, on the brief, was *Sperry A. DeCew,* for the appellant (named defendant).

*Abraham I. Gordon,* with whom, on the brief, were *Richard S. Scalo* and *Ronald D. Japha,* for the appellee (plaintiff).

HULL, J. The named defendant, Andreas Dessoff,[1] appeals[2] from a judgment of foreclosure by sale of a mortgage on his condominium and from the subsequent order of the court opening that judgment and setting new law days for strict foreclosure. Dessoff raises four issues by this appeal: (1) That the trial court erred in failing to rule on his equitable special defense that tender of all past and currently due installments prior to institution of a foreclosure action is a bar thereto; (2) that this special defense is valid as a matter of law; (3) that the trial court erred in refusing to clarify its memorandum of decision by ruling on the above-mentioned special defense and by failing to make requested findings of fact subordinate to such a ruling; and (4) that the trial court erred in opening its judgment for the purpose of setting new law days for strict foreclosure. We find that the court erred in failing to rule on Dessoff's claimed defense. Because that defense is unmeritorious, however, this was harmless error. As to the remainder of Dessoff's claims, there is no error.

On April 26, 1978, Dessoff signed a note in favor of the plaintiff which was secured by a mortgage on his condominium. Under the terms of that note, Dessoff was to pay $470.19 monthly to the plaintiff by the fifteenth day of the month. Dessoff failed to make the agreed-upon payments in December, 1980, January, 1981, and February, 1981. Consequently, on February 25, 1981, the plaintiff sent Dessoff a letter which stated, in part: "This is your final opportunity to bring

---

[1] Robert S. Bello, also a defendant in this action, suffered a default judgment below and is not a party to this appeal.

[2] This appeal, originally filed in the Supreme Court, was transferred to this court. General Statutes § 51-199 (c).

your account up to date and avoid costly legal fees. If the above mentioned mortgage account is not brought completely up to date on or before March 7, 1981, your account will be referred to our attorney for immediate collection and possible foreclosure proceedings. Payments other than the total amount due will be returned and foreclosure will be commenced."

Dessoff did not reply to this letter and on March 20, 1981, Attorney Joseph F. Sgueglia, Jr., representing the plaintiff, sent Dessoff a letter stating that his account had "been turned over to my office for collection." As a result of this letter and a subsequent telephone conversation with Sgueglia, Dessoff wired two checks to the plaintiff on March 27, 1981. The total amount of these checks equalled the four installments due for December, 1980, and January through March, 1981. Upon receipt, the plaintiff forwarded these checks to Sgueglia with directions that they should be returned to Dessoff. Sgueglia did so and shortly thereafter this action was commenced.

Having admitted all of the factual allegations of the complaint in his answer, Dessoff raised three special defenses on the basis of two theories: (1) That during his telephone conversation with Sgueglia, Dessoff made an agreement with him under which the plaintiff would forbear from foreclosing if certain conditions were met;[3] and (2) that Dessoff had "an equitable defense to the foreclosure action." This second theory, hereinafter referred to as Dessoff's equitable defense, was not made any more specific until he filed his post-trial brief. That brief states that Dessoff's equitable defense was that his tender of March 27, 1981, constituted a bar to the foreclosure. The trial court ruled that Dessoff

[3] Dessoff's preliminary statement of issues also claimed, as error, the court's decision that this first theory did not constitute a bar to the foreclosure. That claim was not briefed and is, therefore, deemed abandoned. *Sturman* v. *Socha,* 191 Conn. 1, 3 n.2, 463 A.2d 527 (1983).

had no defense to the foreclosure because Sgueglia had no authority to enter into any agreement, nor was there any consideration to support such an agreement, had one been made. The court failed to make a finding of whether or not Dessoff had, in fact, tendered any payments to the bank. The court did not refer to Dessoff's equitable defense at all, and, upon a motion for clarification, the court declined to make any findings with regard to the agreement or tender, and declined to rule on the equitable defense. Dessoff then filed the present appeal from the court's judgment of foreclosure by sale. That appeal was later amended when the court opened its judgment, upon a motion of the plaintiff, to amend it by setting law days for strict foreclosure. As a result of that strict foreclosure, the plaintiff is now in possession of the property.

Dessoff's first claim of error is that the court erred in failing to rule on his equitable defense. We agree. Practice Book § 3060B requires the trial court to "include in its decision its conclusion as to each claim of law raised by the parties." Practice Book § 285A further provides that "[i]f a party intends to raise any claim of law which may be the subject of an appeal, he must either state the same distinctly to the court before his argument is closed or state it in a written trial brief." Thus, although this defense was less than clear when originally pleaded, the theory upon which it is based was made clear in Dessoff's post-trial brief.[4] Consequently, we conclude that this defense was "raised" within the meaning of Practice Book § 3060B and that the trial court erred in failing to rule upon it.

---

[4] It should be noted that even in Dessoff's post-trial brief, which is almost entirely devoted to his defense that there was an agreement between himself and Sgueglia, this equitable defense is relegated to his final page of argument and is not captioned separately from his other points of law. It is only after a careful reading in search of his equitable defense that the distinction becomes clear.

Our decision would ordinarily mandate that we remand the case in order for the trial court to decide the issue. We decline to do so for two reasons. First, Dessoff's second issue upon appeal is the validity of his equitable defense as a matter of law. Second, "[u]nder circumstances where the record presents the entire proceedings before the trial court, the question is essentially one of law, and we are in no different position than we would be in had the trial court answered it, we have considered, on its merits, the question thus left undecided. *Cochran* v. *McLaughlin*, 128 Conn. 638, 644, 24 A.2d 836 [1942]." *Alderman* v. *Hanover Ins. Group*, 155 Conn. 585, 590–91, 236 A.2d 462 (1967). Such is the case here.

On its merits, Dessoff's claim that his tender[5] of the past and currently due installments barred the subsequent foreclosure action fails, for that tender did not occur prior to the plaintiff's effective election to accelerate the maturity of the mortgage pursuant to its rights thereunder.[6]

---

[5] Dessoff's third claim of error is that the court later erred in failing to clarify its decision upon his motion. Such a clarification, had it been provided by the court, would have provided us with both a ruling on the equitable defense and a finding as to whether Dessoff did or did not tender the installment as he claims. The plaintiff does not appear to deny that those installments were received, however, and, even if they were, Dessoff's claim cannot succeed for his tender would have been too late to act as an effective bar to the subsequent foreclosure. See text, infra.

It should also be noted that Dessoff testified, at trial, that he knew from the conversation with Sgueglia that at least $500 more than the amount he sent was due to cover Sgueglia's fees. Consequently, Dessoff knew that he was tendering less than the full amount due.

As to the court's error in failing to clarify its decision by ruling on Dessoff's equitable defense, our decision as to Dessoff's first two claims of error renders further discussion of this issue unnecessary.

[6] The mortgage contained the following acceleration provision: "IT IS AGREED that the whole of said principal sum and accrued interest thereon shall become due and payable at the option of the holder hereof without demand or notice in the event of any default in the payment of any installment of interest or principal hereinbefore provided for thirty days after the date the same becomes payable as hereinbefore provided, or in the event

"The general rule is that where the acceleration of the maturity of a mortgage debt on default is made optional with the mortgagee, some affirmative action must be taken by him evidencing his election to take advantage of the accelerating provision, and that until such action has been taken the provision has no operation. The exercise of the option should be made in a manner clear and unequivocal, so as to leave no doubt as to the mortgagee's intention. The option is effectively exercised by manifesting the fact in such manner as to apprise the mortgagor." 55 Am. Jur. 2d, Mortgages § 386, p. 431. "Even a declaration may be a sufficient exercise of the option, but to be effective the declaration must be followed by an affirmative act toward enforcing the declared intention." Id., 432. In the present case, the plaintiff declared its intent to accelerate the maturity of the mortgage by its letter of February 25, 1981. That letter clearly stated that if the account was referred to an attorney, "[p]ayments other than the total amount due will be returned and foreclosure will be commenced." Once Dessoff received Sgueglia's letter, the plaintiff had taken the necessary affirmative act toward enforcing its declared intent to foreclose. See *Barrier* v. *Marine Midland Trust Co. of Southern New York,* 263 Md. 596, 284 A.2d 418 (1971) (letter from the bank stating that payments were overdue and demanding payment by a certain date was inconsistent with intent to accelerate. Subsequent letter from bank's attorney stating that balance was due, however, constituted acceleration).

Once the plaintiff's intent to accelerate was declared, the accceleration provision became operable and

of any default in the performance of any of the terms or agreements of the mortgage given to secure payment of the indebtedness evidenced by this note, except as otherwise expressly provided herein, or in the mortgage securing this note, or if title to the premises securing this note shall become vested in anyone other than the maker(s) hereof."

Dessoff could no longer bar the foreclosure by payment of any amount less than that specified in the acceleration provision of the mortgage. 55 Am. Jur. 2d, Mortgages § 390. To rule otherwise would nullify the effect of the acceleration clause. Consequently, although the trial court failed to rule on the equitable defense, it would have been obligated to reject that defense as a matter of law had it decided that issue. Thus, the court's error was harmless.

Dessoff's fourth claim of error, that the court erred in opening its judgment of foreclosure by sale in order to set new law days for strict foreclosure, also fails. Such a decision is within the discretion of the trial court and will not be disturbed in the absence of an abuse of that discretion. *Hartford Federal Savings & Loan Assn.* v. *Stage Harbor Corporation,* 181 Conn. 141, 143, 434 A.2d 341 (1980). The record is replete with evidence that the court did not abuse its discretion in this case.

There is no error.

In this opinion the other judges concurred.